IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHARON CLARKE, § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> PEI WEI ASIAN DINNER LLC, § <br>     Defendant. § | Civil Action No. 3:20-CV-0800-N |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Pei Wei Asian Dinner LLC d/b/a Pei Wei Asian Kitchen's ("Pei Wei") motion to decertify FLSA collective action [63]. Because the potential plaintiffs are not similarly situated, the Court grants the motion.

**I. ORIGINS OF THE FLSA DISPUTE**

This case arises out of Pei Wei's alleged misclassification of its general manager ("GM") position. Plaintiff Sharon Clarke worked as a GM in one of Pei Wei's Florida restaurants from December 2017 to September 2018. Pl.'s Compl. ¶ 10. Clarke claims that GMs spent most of their time performing nonmanagerial, manual labor as a result of Pei Wei's policy of understaffing its restaurants. *Id.* ¶¶ 32, 49. She argues that Pei Wei misclassified her and other GMs as exempt, salaried employees in violation of the Fair Labor Standards Act[1] ("FLSA"). *Id.* ¶ 47.

---

[1] Codified at 29 U.S.C. § 210, *et seq.*

MEMORANDUM OPINION AND ORDER – PAGE 1

In April 2020, Clarke filed this case as a putative class action, seeking unpaid overtime wages under section 216(b) of the FLSA. *Id.* ¶ 1. The Court subsequently granted Clarke's unopposed motion for conditional class certification under the lenient first step of the *Lusardi v. Xerox Corporation* two-step approach.[2] Order Granting Mot. Certify 1 [30]. The Court approved a class consisting of:

> All General Managers who were classified as exempt by Defendant, who did not execute arbitration agreements, and who worked for Defendant at any time from three years prior to the Order granting Notice to the present.

Order 1 [32]. After several voluntary dismissals [43], [46], [55], the potential class consists of Clarke and sixteen other former GMs (collectively "opt-in Plaintiffs" or "Plaintiffs"). Pei Wei now moves to decertify the class, arguing that the opt-in Plaintiffs are not similarly situated.

## II. LEGAL STANDARD

### A. *FLSA Certification post-Swales*

Section 216(b) of the FLSA provides that a plaintiff may bring an action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Until recently, the majority of courts in the Fifth Circuit employed the *Lusardi* two-step approach to collective action certification. At the first step, courts applied a lenient standard to determine whether to conditionally certify a class and give notice to potential class members. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). At the second step,

---

[2] *Lusardi v. Xerox Corp.*,118 F.R.D. 351 (D.N.J. 1987). The Fifth Circuit has since rejected this approach. *See infra* Section II.A.

courts conducted a decertification analysis upon a defendant's motion at the close of discovery. *Mooney*, 54 F.3d at 1214. At that stage, courts used a more rigorous test to determine whether the potential class members were similarly situated. *Id.*

In *Swales v. KLLM Transportation Services LLC*, however, the Fifth Circuit rejected the *Lusardi* approach. 985 F.3d 430, 440 (5th Cir. 2021). The court concluded that "nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process." *Id.* Under *Swales* "a district court should identify, *at the outset of the case*, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441 (emphasis added). This method ensures that notice goes out to only those who are similarly situated. *Id.* at 440

*Swales* does not provide guidance on how courts should proceed with cases that were conditionally certified under step one of *Lusardi* but have not yet resolved a motion to decertify at step two. But many courts have retained the decertification analysis from step two of *Lusardi* to (1) resolve post-*Swales* motions to decertify and (2) determine whether employees are similarly situated. *See, e.g.*, *Torres v. Chambers Protection Serv.*, 2021 WL 3419705, at *2 n. 3 (N.D. Tex. 2021) ("Even though *Swales* invalidated the *Lusardi* approach, Courts still use these factors to determine whether putative collective-action members are similarly situated."); *Badon v. Berry's Reliable Res.*, 2021 WL 933033, at *3 (E.D. La. 2021); *Segovia v. Fuelco Energy LLC*, 2021 WL 2187956, at *7 (W.D. Tex. 2021). Indeed, *Swales* primarily criticizes the first step of the *Lusardi* approach. *Swales*, 985 F.3d at 439 ("The real issues *Lusardi* creates occur not at decertification, but from the

MEMORANDUM OPINION AND ORDER – PAGE 3

beginning of the case."). Thus, the Court will employ the similarly-situated standard from the *Lusardi* step-two analysis for this motion to decertify.

### B. "Similarly-Situated" Standard

Plaintiffs bear the burden of proving that the individual class members are "similarly situated." *See* 29 U.S.C. § 216(b); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008). If a plaintiff fails to satisfy this burden, "the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Mooney*, 54 F.3d at 1214. In determining whether class members are similarly situated, courts may consider: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 281 (5th Cir. 2016) (quoting *Mooney*, 54 F.3d at 1213–14, 1213 n.7).

### III. THE COURT GRANTS THE MOTION TO DECERTIFY

Clarke has not met her burden of establishing that the opt-in Plaintiffs are similarly situated. Indeed, all three factors of the similarly-situated analysis favor decertification: (1) the opt-in Plaintiffs have disparate factual and employment settings; (2) Pei Wei's defenses are individualized; and (3) fairness and procedural considerations support decertification.

### A. The Opt-In Plaintiffs Have Disparate Factual and Employment Settings

"The first factor of the similarly situated analysis assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary." *Sanders v. Latshaw Drilling Co.*,

MEMORANDUM OPINION AND ORDER – PAGE 4

2019 WL 1209769, at *3 (N.D. Tex. 2019) (internal citation and quotation marks omitted). In this case, Plaintiffs argue they are similarly situated because they all performed nonexempt work due to Pei Wei's corporate practices. Pls.' Resp. Mot. Decertify 7 [66]. However, the evidence indicates that the factual and employment setting of each Plaintiff varied significantly.

       1.   ***The Opt-In Plaintiffs Performed Different Nonmanagerial Tasks.*** – "In analyzing employees' job duties, courts look not only to the employer's classification of the employees, but also to the level of similarity in actual job performance." *Sanders*, 2019 WL 1209769, at *3. Although Pei Wei maintained a company-wide job description for GMs, the day-to-day tasks varied by employee and store. Each GM determined if, when, and to what extent to perform nonmanagerial duties. *See, e.g.*, Def.'s App. Ex. C, Cesar Rodriguez Decl. ¶ 6 [63-1]; Def.'s App. Ex. A-1, Clarke Dep. 39:17–41:25. Clarke, for instance, testified that she sometimes hired an extra cook during peak hours, while at slower times she cut an employee and helped personally with nonmanagerial tasks. Clarke Dep. 23:21–24:9. Indeed, Pei Wei gave GMs authority to decide when to call in additional staff and when to release employees based on the sales volume of the store. *Id.*; Rodriguez Decl. ¶ 6. This discretion led to the GMs' performance of different nonmanagerial tasks. Clarke stated that her tasks varied daily, from mopping floors to setting up kitchen stations. Clarke Dep. 30:14–32:13. Her decisions on which tasks to perform "depend[ed] on the team members that were there" because "[s]ome were more effective and some weren't as effective." *Id.* at 32:11–13. In contrast, GM Mario Romero spent 90 percent of his time cooking in the kitchen. Def.'s App. Ex. A-2, Romero Dep. 10:14–21. Further, Clarke

MEMORANDUM OPINION AND ORDER – PAGE 5

spent 10 to 20 percent of her time doing "office work," Clarke Dep. 22:4–10, while Romero spent approximately 10 percent of his time on office management. Romero Dep. 46:23–46:13. Although the opt-in Plaintiffs are similar in that they performed nonmanagerial tasks, the type of tasks and time spent on them varied widely.[3]

Additionally, the evidence does not support Plaintiffs' contention that a centralized policy of understaffing necessitated the GMs' nonmanagerial work. Plaintiffs claim that each GM's labor needs had to be "approved by a supervisor and ultimately corporate," and that Pei Wei used a standardized formula in the decision process. Pls.' Resp. 7. But both Clarke and Romero stated that they had hired multiple employees without consulting a supervisor. Clarke Dep. 47:7 49:1; Romero Dep. 38:5–39:19. Further, Plaintiffs' testimony points to different reasons for their manual tasks. Clarke blames understaffing and high turnover, *see* Clarke Dep. 39:17 – 43:17, but Romero denied that he performed manual labor due to understaffing, and instead claimed that Pei Wei had a culture of GMs helping in the kitchen. Romero Dep. 17:12–18:4. And the record shows that staffing issues varied by store. Romero testified that it was difficult to hire because of Pei Wei's low pay rate, *id.* at 10:14–21, while Clarke stated that she was always able to find new employees when necessary. Clarke Dep. 43:18–21. Therefore, an individual assessment of each store would be necessary to determine whether understaffing was truly the reason for each

---

[3] Plaintiffs argue that an inquiry into job tasks would not be onerous because there are only a set number of nonmanagerial jobs in each store. Pls.' Resp. 11–12. But this argument ignores the inquiry that would be necessary to determine why and how often GMs decided to perform nonmanagerial work.

MEMORANDUM OPINION AND ORDER – PAGE 6

Plaintiff's nonmanagerial work. This type of inquiry would be unsuitable for collective action.

*2. The Opt-In Plaintiffs Worked in Different Geographical Settings.* – Clarke and three other GMs worked at Pei Wei restaurants in Florida, while the remaining Plaintiffs worked in Arizona, California, Oklahoma, Michigan, Nevada, New Mexico, North Carolina, and Texas. Def.'s Mot. Decertify 2.[4] The stores in these markets had different sales volumes and staffing. The average weekly sales for each location varied from approximately $7,000 to $40,000. Def.'s App. Ex. B-1. These sales volumes indicate different levels of customer traffic, which would necessitate disparate types and amounts of nonmanagerial tasks performed by each GM. Thus, a Plaintiff's experience at one location would not be representative of other Plaintiffs' experiences at different locations.

*3. The Opt-In Plaintiffs Had Different Supervision Levels.* – Each Plaintiff experienced varying levels of supervision from Market Partners (Pei Wei's regional managers) in their assigned regions. For example, Clarke's Market Partner visited the store once a week for a few hours. Clarke Dep. 51:4–12. In contrast, Romero's Market Partner visited approximately once a month for a couple of hours. Romero Dep. 31:21–32:3. Each Plaintiff did have labor budget guidelines that used sales to suggest the optimal number of hours for each store's staffing, Clarke Dep. 44:25–46:16, but GMs were able to exceed those guidelines, and some Market Partners viewed them as merely flexible goals. *Id.*;

---

[4] Pei Wei's brief provides a chart summarizing employment information from Plaintiffs' answers to interrogatory numbers one and two. For the complete interrogatory responses, see Def.'s App. 142–368.

MEMORANDUM OPINION AND ORDER – PAGE 7

Def.'s App. Ex. A-3, Joseph Janeway Dep. 36:22–37:14. Because the level of discretion and supervision varied by GM and Market Partner, a group inquiry would not adequately determine each Plaintiff's factual employment setting.

   *4.*   ***The Opt-In Plaintiffs Had Different Compensation Levels.*** – Finally, compensation and alleged overtime hours varied by Plaintiff. Plaintiffs' salaries ranged from $48,000 to $64,5000 annually based on experience, geographic location, and sales volume. Def.'s App. Exs. A-4 through A-20, Answers Interrog. No. 9.[5] Plaintiffs also received bonuses based on performance ranging from $400 to $10,000. Def.'s App. Exs. A-4 through A-20, Answers Interrog. No. 12. Further, each Plaintiff reports different estimated overtime hours, which are not necessarily reflected in the time stamps from swiped access cards. Clarke Dep. 68:16–69:4 (noting that GMs were not required to clock in). Thus, the Court would have to assess each Plaintiff's recollection of overtime hours. This inquiry is not conducive to collective action.

   Overall, Plaintiffs have not shown that their actual job performance was similar. Outside of the general allegation that Pei Wei violated the FLSA and GMs performed nonexempt work, Plaintiffs have not established similarities in their day-to-day tasks. The disparate factual and employment settings of Plaintiffs thus favor decertification.

### B. Pei Wei's Defenses Are Individualized

   The second factor assess "whether the potential defenses pertain to the opt-in class as a whole or whether many different defenses will be raised with respect to each individual

---

[5] For Plaintiffs' complete interrogatory responses, see Def.'s App. 142-368.

MEMORANDUM OPINION AND ORDER – PAGE 8

plaintiff." *Sanders*, 2019 WL 1209769 at *4. Here, Pei Wei claims that it will raise individual defenses under the FLSA, as well as waiver and statute of limitations arguments.

    ***1. Pei Wei's Exemption Defenses Require Individual Assessment.*** – Pei Wei asserts that Plaintiffs were exempt under the FLSA's executive exemption, administrative exemption, or a combination of both. Def's Mot. Decertify 18. The administrative exemption requires an inquiry into whether the employees' primary duties were office or nonmanual work, and whether the employees' work included the exercise of discretion. 29 C.F.R. § 541.200(a). As discussed previously in Section III.A.1, Plaintiffs had considerable discretion in their roles as GMs to determine whether and to what extent to perform nonmanagerial tasks. This defense would therefore require individual inquiries into each Plaintiff's daily tasks.

    Further the executive exemption requires inquiries into whether the employees' primary duty was management, whether the employees customarily directed two or more other employees, and whether the employees had the authority to hire and fire or promote employees. 29 C.F.R. § 541.100. Plaintiffs' responses to Pei Wei's requests for admissions show that the answers to these questions vary by individual. Some Plaintiffs admitted to creating advertisements for new employees, while others denied such activity. Def.'s App. Exs. A-4 through A-20, Request Admis. No. 1.[6] Some admitted to creating job postings, but others denied doing so. Def.'s App. Exs. A-4 through A-20, Request Admis. No. 2. Some Plaintiffs claimed to conduct performance reviews, but others

---

[6] For Plaintiffs' complete responses to Pei Wei's requests for admissions, see Def.'s App. 142–368.

MEMORANDUM OPINION AND ORDER – PAGE 9

disagreed. Def.'s App. Exs. A-4 through A-20, Request Admis. No. 17. All of the Plaintiffs did admit to training employees, but they gave disparate responses on whether they disciplined employees. Def.'s App. Exs. A-4 through A-20, Request Admis. Nos. 17, 21. Based on the varied responses to this questionnaire, an assessment of whether Plaintiffs qualified for either FLSA exemption is unsuitable for collective action.

  2. ***Pei Wei Raises Defenses Against Only Certain Plaintiffs***. – Pei Wei argues that it will raise arbitration and statute of limitations arguments against some of the Plaintiffs. First, Pei Wei asserts that four of the Plaintiffs signed arbitration agreements that preclude their ability to participate in this litigation. Def.'s Mot. Decertify 21–22. This analysis will require factual inquiries into these Plaintiffs' assent to the arbitration agreement.

  Second, Pei Wei argues that some of Plaintiffs' claims are barred by the FLSA's statute of limitations. The FLSA provides a two-year statute of limitations, with a one-year extension if a plaintiff can show a willful violation. 29 U.S.C. § 255(a). Pei Wei argues that six of the opt-in Plaintiffs' last day of employment was more than two years before their claims were tolled. Def.'s Mot. Decertify 22–23. Therefore, their claims would be barred unless they qualified for the extended three year-statute of limitations. And Pei Wei's management changed in 2019, Def.'s App. Ex. D ¶ 9, necessitating two different inquiries into whether each management group committed a willful violation. Further, Pei Wei argues that ten of the opt-in Plaintiffs' last day of employment predates even the three-year limitation period, which would bar some of their claims entirely. Def.'s Mot. Decertify 22–23. Given the differences in employment dates, Pei Wei's statute of limitations arguments would require individual assessments.

MEMORANDUM OPINION AND ORDER – PAGE 10

### *C. Fairness and Efficiency Considerations Support Decertification*

The third factor "evaluates fairness and procedural considerations against the backdrop of the two purposes of an FLSA collective action: (1) to ease the burden on similarly situated plaintiffs, and (2) to ease the burden of duplicative claims on the judicial system." *Sanders*, 2019 WL 1209769 at *5 (citing *Nguyen v. Versacom, LLC*, 2016 WL 6650860, at *6 (N.D. Tex. 2016)). "Where disparate factual issues . . . predominate over any common issues of law, the remedial purposes of [the FLSA] do not justify proceeding collectively." *Wilson v. Navika Capital Grp., LLC*, 2014 WL 2534904, at *6 (S.D. Tex. 2014).

Because Plaintiffs have not shown they are similarly situated, this case is not suited for collective action. First, Clarke's testimony would not be representative of the nontestifying Plaintiffs' experiences. As discussed *supra*, Section III.A.1, GMs use their discretion differently in determining when and how often to perform nonmanagerial work. Further, Clarke worked at a different location at different time periods than the other Plaintiffs. *See* Def.'s Mot. Decertify 2. Clarke cannot speak to how the other GMs used their discretion nor the staffing issues they may or may not have faced. Because Clarke's testimony would not be representative, fairness considerations support decertifying the class.

Efficiency considerations also support decertification. Because this case involves a small number of plaintiffs, decertification would not result in exponential growth in cost. *See Sanders*, 2019 WL 1209769, at *5. Sixteen class members would be dismissed without prejudice upon decertification. Although combining resources could benefit Plaintiffs,

MEMORANDUM OPINION AND ORDER – PAGE 11

litigating this case as a collective action is inefficient when Plaintiffs are not similarly situated. The different factual inquiries would require seventeen different "mini trials" about the day-to-day activities of each Plaintiff. The Court thus concludes that it would be unfair and inefficient to continue this case as a collective action.

### CONCLUSION

Because Plaintiffs have not shown that they are similarly situated, the Court grants Pei Wei's motion to decertify the FLSA collective action. Accordingly, the Court decertifies the class and dismisses the opt-in Plaintiffs' claims without prejudice.

Signed March 13, 2023.

David C. Godbey
Chief United States District Judge